# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ALLYIS, INC., a Washington corporation, )
                                     )
           Appellant, )

v.

JEREMY AND NICOLE SCHRODER, )

           Defendants, )

SIMPLICITY CONSULTING INC., a )
Washington corporation, )

           Respondent, )

MATTHEW F. DAVIS, attorney for Allyis, )
Inc., )

           Appellant. )
                                     )

No. 74511-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 27, 2017

APPELWICK, J. — Allyis sued its former employee and his new employer, Simplicity, for breach of a noncompete agreement. The court dismissed Allyis's case with prejudice. It awarded attorney fees and costs under RCW 4.84.185 for a frivolous case and CR 11 sanctions for Allyis's failure to perform a reasonable inquiry before filing the complaint. Allyis and its counsel appeal. We affirm.

## FACTS

Allyis Inc. is a Washington company that was originally formed as Essential Web Design & Consulting Inc. Its business began as internet design and consulting, and it expanded to providing contract workers to technology companies.

Jeremy Schroder was hired by Allyis in 2002, when it was still doing business as Essential Web Design. He was provided an employee handbook, which contained a noncompete agreement and a confidentiality agreement.

Schroder ended his employment with Allyis on May 7, 2014. Prior to leaving Allyis, Schroder expressed an interest in working for Simplicity Consulting Inc. Simplicity is a marketing talent agency that provides consultants to other companies. Simplicity offered Schroder a position as an account manager on April 21, 2014. Schroder accepted.

After Schroder began working with Simplicity, Allyis became concerned that Schroder was soliciting Allyis employees to join him at Simplicity. Through its attorney, Allyis asked Schroder to stop inducing Allyis employees to leave Allyis.

On September 22, 2014, Allyis filed a complaint against Schroder, his wife, and Simplicity. It alleged that Schroder had breached the terms of his noncompete and confidentiality agreements. And, it alleged that Simplicity tortiously interfered with these agreements, violated the Consumer Protection Act (CPA),[1]

---

[1] Chapter 19.86 RCW.

2

communicated false and injurious information about Allyis to other persons, and violated the Uniform Trade Secrets Act (UTSA).[2]

On March 10, 2015, Allyis filed an amended complaint. This complaint withdrew the four claims previously asserted against Simplicity, replacing them with an unjust enrichment claim.

Simplicity served discovery requests on Allyis on March 16, 2015. By July 9, 2015, Allyis had not produced any discovery, despite Simplicity's multiple requests, so Simplicity filed a motion to compel discovery. On July 17, 2015, the trial court granted the motion. Simplicity scheduled depositions of two Allyis executives to take place on July 23, 2015. But, counsel for Allyis, Matthew Davis, failed to appear with the witnesses. And, Allyis still failed to respond to discovery requests. On August 14, 2015, the court entered a second order, holding Allyis and Davis in contempt of the July 17 order.

Simplicity moved for summary judgment on August 7, 2015. The motion was set for a hearing on September 4, 2015. But, on September 3, 2015, Allyis moved to voluntarily dismiss the case. Simplicity in turn moved for a dismissal with prejudice.

The trial court granted Simplicity's motion to dismiss with prejudice. It found that Allyis and its counsel had willfully disregarded two of the court's orders and engaged in discovery abuse. And, it found that any lesser sanction was unlikely to deter Allyis from engaging in further discovery abuse or contempt of court.

---

[2] Chapter 19.108 RCW.

3

Simplicity moved for fees and costs for opposing a frivolous action. It argued that fees were warranted under RCW 4.84.185, because Allyis recognized its original four claims lacked merit by dropping them and it knew or should have known that its unjust enrichment claim was frivolous. Alternatively, Allyis argued that the court should award CR 11 sanctions.

The trial court granted Simplicity's motion for fees and costs. It found that Allyis's claims were frivolous and that Davis violated CR 11 by pursuing the claims against Simplicity. After Allyis moved for reconsideration, the trial court amended the order and entered additional findings. Allyis and its attorney Davis appeal.

## DISCUSSION

Allyis challenges both the CR 11 sanctions and the award of fees and costs under RCW 4.84.185. It challenges a number of the trial court's findings of fact as lacking substantial evidence. We address the challenged findings in the context of the CR 11 sanctions and the RCW 4.84.185 attorney fees.

I. CR 11 Sanctions

We review a trial court's decision to impose or deny CR 11 sanctions for an abuse of discretion. Bldg. Indus. Ass'n. v. McCarthy, 152 Wn. App. 720, 745, 218 P.3d 196 (2009). The court abuses its discretion where its conclusion was the result of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons. Skimming v. Boxer, 119 Wn. App. 748, 754, 82 P.3d 707 (2004).

CR 11 relates to the signing of pleadings, motions, and legal memoranda. It states,

> The signature of a party or of an attorney constitutes a certificate by that party or attorney that the party or attorney has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

CR 11(a). Where a party or an attorney violates this rule, the court may impose appropriate sanctions upon the party or person who signed the pleading, motion, or legal memorandum, or both. Id.

CR 11 envisions two violations of the rule: filings that are not well grounded in fact and warranted by law, and filings that are made for an improper purpose. Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 217, 829 P.2d 1099 (1992). Before imposing CR 11 sanctions for a baseless filing, the court must find that the attorney failed to conduct a reasonable inquiry into the factual and legal basis of the claim. Id. at 220. Courts use an objective standard in determining whether the attorney engaged in an appropriate inquiry. Stiles v. Kearney, 168 Wn. App. 250, 261-62, 277 P.3d 9 (2012). The court must make findings that specify the actionable conduct to impose CR 11 sanctions for a baseless complaint. Id. at 262. Namely, the court must make a finding that either (1) the claim was not grounded in fact or law and the attorney failed to perform a reasonable inquiry into the law or facts, or

5

(2) the filing was made for an improper purpose. Biggs v. Vail, 124 Wn.2d 193, 201, 876 P.2d 448 (1994).

In this case, the trial court found that Allyis and Davis violated CR 11 and therefore imposed CR 11 sanctions jointly and severally against Allyis and Davis. It did so after finding that neither the unjust enrichment claim nor the original four claims were well grounded in fact or warranted by existing law or a good faith argument to modify the law. Consequently, it found that Allyis and Davis failed to perform a reasonable inquiry prior to filing the original complaint and the amended complaint. The court noted that Davis's conduct throughout the lawsuit was not consistent with a claim filed in good faith. And, it inferred that Allyis and Davis filed the original and amended complaints for an improper purpose: to bring and keep Simplicity's presumably deep pockets into the litigation.

Allyis contends that the trial court erred by sanctioning both it and its attorney, failing to enter the required findings, and entering findings that were not supported by the record. As discussed below, we conclude that the trial court did not abuse its discretion in imposing CR 11 sanctions.

A.     Joint and Several Liability

Allyis argues that the trial court erred in entering CR 11 sanctions jointly and severally against it and its attorney. It suggests that CR 11 sanctions can be imposed against only the attorney, not the client. But, CR 11(a) specifically states, "If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction." The rule gives

broad discretion for the trial court to determine who should be sanctioned. In re Cooke, 93 Wn. App. 526, 529, 969 P.2d 127 (1999). Sanctions directly on a party are permissible where the party is responsible for the frivolous filing. Id. at 529-30. Here, counsel for Allyis signed the original complaint and the amended complaint. Allyis's chief financial officer, Rakesh Garg, signed the verification attached to the original complaint, verifying that its contents were accurate. Thus, both Allyis itself and its counsel were responsible for the filing, and could be sanctioned under CR 11.

B.    Necessary Findings

Allyis contends that the trial court failed to enter the required findings to support CR 11 sanctions. And, it argues that the findings that were entered do not support the judgment. We disagree. The trial court made not one, but both Biggs findings: that the claims were not grounded in fact or law and Allyis and Davis failed to perform a reasonable inquiry before filing the original and amended complaints, and that the claims were filed for the improper purpose of bringing Simplicity's deep pockets into the litigation. Further, as discussed below, we conclude that the court's findings on all of Allyis's claims support the CR 11 sanctions.

1.    Unjust Enrichment

In its amended complaint, Allyis argued that Schroder's breach of the noncompete and confidentiality agreements conferred a financial benefit on Simplicity: namely, profits from employees and clients who were wrongfully recruited from Allyis. Allyis contended that Simplicity was aware of the benefit it would obtain from Schroder's actions and intended to obtain it. And, it asserted

7

that Schroder breached the noncompete and confidentiality agreements on behalf of Simplicity and as Simplicity's agent. During the course of litigation, Allyis did not comply with Simplicity's discovery requests to obtain more information about this claim.

On appeal, Allyis and Simplicity continue to dispute the correct legal standard for an unjust enrichment claim under Young v. Young, 164 Wn.2d 477, 191 P.3d 1258 (2008).[3] Allyis argues that under Young, unjust enrichment requires only that the defendant received a benefit at the plaintiff's expense. Simplicity argues that Young requires that the plaintiff conferred a benefit on the defendant.

In Young, the plaintiff sued for quiet title of property. 164 Wn.2d at 480. The defendants counterclaimed, arguing that the plaintiff had been unjustly enriched by improvements they made to the property. Id. The trial court awarded the defendants the market value of the improvements, but subtracted general contractor's costs. Id. at 482.

The only issue on appeal was the appropriate measure of recovery. Id. at 483, 487. To answer this question, the court had to resolve whether the measure of recovery was unjust enrichment or quantum meruit. Id. at 483. It defined unjust enrichment as, "the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Id.

___

[3] In Simplicity's motion for fees and costs pursuant to RCW 4.84.185, it argued that Allyis's unjust enrichment claim was advanced without reasonable cause, because Allyis never conferred any benefit on Simplicity. Allyis responded that Simplicity's interpretation of the doctrine of unjust enrichment was too narrow, and that Simplicity misinterpreted Young.

8

at 484. Quoting a Court of Appeals case, the court listed the elements of unjust enrichment: " 'a benefit conferred upon the defendant <u>by the plaintiff</u>; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.' " <u>Id.</u> at 484 (emphasis added) (quoting <u>Baile Commc'ns, Ltd. v. Trend Bus. Sys., Inc.</u>, 61 Wn. App. 151, 159-60, 810 P.2d 12, 814 P.2d 699 (1991)). The court then put these elements in its own words: "(1) <u>the defendant receives a benefit</u>, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." <u>Id.</u> at 484-85 (emphasis added).

Allyis claims that the trial court erroneously interpreted <u>Young</u> as requiring the plaintiff to directly confer a benefit on the defendant for an unjust enrichment claim to succeed. It argues that the <u>Young</u> court did not approve this element, and instead required the defendant to receive a benefit at the plaintiff's expense.

Since <u>Young</u>, Washington courts have clarified the first element of unjust enrichment. <u>See, e.g.</u>, <u>Austin v. Ettl</u>, 171 Wn. App. 82, 92, 286 P.3d 85 (2012) ("a plaintiff conferred a benefit upon the defendant"); <u>Nat'l Sur. Corp. v. Immunex Corp.</u>, 162 Wn. App. 762, 778 n.11, 256 P.3d 439 (2011) ("a party must show a benefit conferred upon the defendant by the plaintiff"), aff'd, 176 Wn.2d 872, 297 P.2d 688 (2013); <u>Cox v. O'Brien</u>, 150 Wn. App. 24, 37, 206 P.3d 682 (2009) ("one party must have conferred a benefit to the other"). But, Allyis argues that Washington courts have still not clarified this element. It cites <u>Norcon Builders,</u>

LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 254 P.3d 835 (2011) to contend that this court has adopted the defendant must receive a benefit test, not the plaintiff conferred a benefit test.

Norcon phrased the first element of unjust enrichment as "the defendant receives a benefit." Id. at 490. However, the court also specifically noted, "The mere fact that a defendant has received a benefit from the plaintiff is insufficient alone to justify recovery. The doctrine of unjust enrichment applies only if the circumstances of the benefits received or retained make it unjust for the defendant to keep the benefit without paying." Id. Thus, we disagree with Allyis's reading of that case. Norcon is consistent with a requirement that the plaintiff confers a benefit to the defendant. That courts have phrased this requirement in different ways does not create two competing tests, but a single test explained in several ways.

Considering that other courts have applied the same elements of unjust enrichment as the trial court did here, we conclude that the court did not apply an incorrect legal standard. Therefore, the trial court did not err in finding that the unjust enrichment claim is not warranted by existing law or a good faith argument to modify the law.[4]

Allyis further argues that the trial court's findings of fact regarding the unjust enrichment claim are not supported by substantial evidence. It challenges finding of fact 7, which stated, "At no point did Allyis present evidence showing that it

---

[4] Allyis never argued that the rule announced in Young should be extended, modified, or reversed—instead, it argued for an interpretation of the case that is not supported by the law.

conferred a benefit on Simplicity, nor did plaintiff present compelling or persuasive argument suggesting that the law as articulated in Young and its progeny did not apply here. Thus, Allyis's unjust enrichment claim was not well grounded in fact or warranted by existing law." It also challenges findings of fact 25 and 26, that the unjust enrichment claim was not well grounded in fact or warranted by either existing law or an argument to modify the law.

We review findings of fact for substantial evidence. Robinson v. Safeway Stores, Inc., 113 Wn.2d 154, 157-58, 776 P.2d 676 (1989). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the premise. Id. If substantial evidence supports the findings, we review whether the findings support the trial court's conclusions of law and judgment. Id.

Under Young, Allyis had to show that it conferred a benefit on Simplicity, and the circumstances made it unjust for Simplicity to retain the benefit without paying. 164 Wn.2d at 484-85. Allyis never argued that it conferred a benefit on Simplicity, contending instead that Schroder improperly bestowed profits from Allyis employees and clients on Simplicity. Given these allegations, we conclude that substantial evidence supports the trial court's findings that Allyis's unjust enrichment claim was not well grounded in fact or warranted by existing law or a good faith argument to modify the law.

## 2.    Tortious Interference

Allyis contends that its tortious interference claim was supported by current Washington law. It argues that while an issue existed as to consideration, the claim was at least arguable. In its original complaint, Allyis alleged that Simplicity

knowingly interfered with the noncompete and confidentiality agreements between Allyis and Schroder. It contended that Simplicity used improper means to solicit and encourage a breach of these agreements.

Relying on Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 86 Wn. App. 732, 935 P.2d 628 (1997), Allyis argues that this tortious interference claim was supported by the law. Goodyear set out the elements of tortious interference: "(1) the existence of a valid business expectancy; (2) defendant's knowledge of that expectancy; (3) defendant's intentional interference with that expectancy; (4) defendant's improper purpose or use of improper means in so interfering; and (5) the plaintiff's resultant damages." Id. at 745.

Allyis rests its argument on the first element, whether a valid business expectancy existed. But, Allyis never elicited evidence that could establish the other four elements of tortious interference. It did not produce any evidence that Simplicity intentionally induced a breach of these agreements, that it did so for an improper purpose or utilized improper means, and that Allyis had resulting damages. See Goodyear, 86 Wn. App.at 745. Even if the first element was met, the remaining elements were not.

Nor are we persuaded by Allyis's argument that a valid business expectancy existed here. For Allyis to have had a potential claim on this theory, it needed to show the existence of a valid contract. See Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 158, 52 P.3d 30 (2002) ("A valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value."). A noncompete agreement may be enforceable

if it is validly formed and reasonable. Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 833, 100 P.3d 791 (2004). Generally, consideration for such an agreement exists if the employee enters into the noncompete agreement when he or she is first hired. Id. at 834. A noncompete agreement entered into after the employee begins employment will be enforced only if supported by independent consideration. Id. Independent consideration means that the parties make additional promises or take on additional obligations. Id. For example, the employee may receive additional wages, a promotion, or a bonus in exchange for signing the agreement. Id.

Allyis asserted that two agreements originally contained in its employee handbook, the noncompete agreement and the confidentiality agreement, established a contract between Allyis and Schroder. The noncompete agreement provides that Schroder would not "engage in a business similar to or in competition with the business of [Allyis]" during his employment or for a period of five years afterward. The confidentiality agreement provides that Schroder would not disclose any confidential information for three years after the term of the agreement. Both agreements were signed by Schroder on July 23, 2002.

Schroder had already begun his employment with Allyis by that time. He was hired on May 10, 2002. Therefore, these agreements lacked consideration, unless Schroder received an additional benefit in exchange for his promises. See Labriola, 152 Wn.2d at 834. Allyis suggests that there was a debatable issue as to consideration, because Schroder continued to be employed with Allyis and was promoted from an entry position to management.

13

But, the Labriola court rejected a similar argument. There, the employee sought a declaratory judgment that the noncompete agreement was null and void. 152 Wn.2d at 832. The employer argued that continued employment served as consideration for the noncompete agreement, which was signed after the employee began work for the employer. Id. at 835-36. The court held that because the employer did not incur any additional duties or obligations from the noncompete agreement, continued employment did not serve as consideration. Id. at 836. The employer also argued that training received after the employee signed the noncompete agreement functioned as consideration. Id. The court rejected this argument as well, noting that the noncompete agreement did not mention any additional training that would serve as consideration for the employee's promise not to compete. Id. at 836-37.

Here, nothing in the noncompete agreement or Schroder's circumstances of employment suggests that he continued to be employed or that he was promoted as a result of his promise not to compete. Labriola makes clear that later training and continued employment alone are not sufficient to constitute independent consideration. Nothing in the record would support an inference, let alone a conclusion, that Schroder's later promotion was given as consideration for a noncompete agreement. Thus, Allyis never alleged any facts that would support an inference of independent consideration. Without a valid noncompete agreement, there can be no basis for the tortious interference claim as pleaded.

There was no legal or factual basis for Allyis's tortious interference claim. Consequently, the trial court did not err in finding that this claim was not well

grounded in fact or warranted by existing law or a good faith argument to modify the law.

### 3. Injurious Falsehood

Allyis asserts that its injurious falsehood claim was supported by the law and the facts. In the original complaint, Allyis stated that Schroder conveyed false and misleading information about Allyis's status and business plans to Allyis employees. And, it stated that this false and misleading information was conveyed to and used by Simplicity in an attempt to harm Allyis. On appeal, Allyis argues that while this claim was based on hearsay statements, a lawsuit may be based on hearsay evidence.

Allyis argues that Washington recognizes the tort of injurious falsehood. It cites the Restatement (Second) of Torts § 623A (Am. Law Inst. 1977) for the elements of injurious falsehood, recognizing that it has not been adopted in Washington. Those elements are:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if
>
> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
>
> (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Id.

Even assuming that Washington law supports a claim of injurious falsehood, Allyis has not alleged any action by Simplicity that would meet the elements. While

Allyis asserted that Simplicity used false information to harm Allyis, Allyis never specified what false information Schroder gave to other Allyis employees. Nor did it specify how Simplicity used this information. Allyis did not file any declarations or provide any information via discovery to clarify the factual basis for this claim prior to withdrawing it.[5] We conclude that the trial court did not err in finding that Allyis's injurious falsehood claim was not well grounded in fact or warranted by law or a good faith argument to modify existing law.

### 4.    Uniform Trade Secrets Act

Allyis also argues that the trial court had no basis to find its UTSA claim to be frivolous. In its original complaint, Allyis alleged that Simplicity and Schroder had violated the UTSA. It claimed that Allyis's employee and compensation information were trade secrets that Simplicity had acquired through Schroder. And, it stated that Schroder and Simplicity used this confidential information to recruit Allyis employees for Simplicity. Allyis alleged that Simplicity knew or had reason to know that these trade secrets were acquired by improper means.

Under the UTSA, actual or threatened misappropriation of trade secrets may be enjoined, or a complainant may recover damages for actual loss caused by misappropriation. RCW 19.108.020(1), .030(1). Misappropriation means the acquisition of a trade secret by a person who knows or has reason to know that it was acquired by improper means, or disclosure or use of another's trade secret

---

[5] Simplicity attempted to elicit information about this claim in its discovery requests. But, shortly before Simplicity served its discovery requests on Allyis, Allyis amended its complaint to withdraw its original claims against Simplicity, replacing them with the unjust enrichment claim.

without express or implied consent, where the person used improper means to learn of the trade secret. RCW 19.108.010(2). A trade secret is information that derives independent economic value from not being generally known and that is protected by reasonable efforts to maintain secrecy. RCW 19.108.010(4).

Before it withdrew this claim, Allyis did not provide any additional information in declarations or through discovery that would support its allegation that Simplicity used confidential information to recruit Allyis employees. Given the lack of a factual basis for this claim, the trial court did not err in finding that Allyis's UTSA claim was not well grounded in fact or warranted by existing law or a good faith argument to modify the law.

### 5.  Consumer Protection Act

Allyis argues that it stated a claim for a CPA violation due to its tortious interference claim. In the original complaint, Allyis alleged that Simplicity's and Schroder's actions constituted unfair and deceptive acts and practices in the conduct of trade or commerce.

RCW 19.86.020 provides that unfair methods of competition and unfair or deceptive acts in trade or commerce are unlawful. Allyis's CPA claim rested on the alleged actions that constituted its other claims, discussed above. Because we conclude that these claims were not well grounded in fact or warranted by existing law or a good faith argument to modify the law, it follows that the same is true for Allyis's CPA claim.

None of the claims Allyis brought against Simplicity were well grounded in fact or existing law or a good faith argument to modify the law. From this, we infer

17

that Davis did not perform a reasonable inquiry before filing the original or amended complaint—otherwise, he would have discovered that these claims were not supported by the law or facts. The trial court's findings of fact relating to CR 11 sanctions[6] are supported by substantial evidence in the record. Therefore, we conclude that the trial court did not abuse its discretion in ordering CR 11 sanctions jointly and severally against Allyis and Davis.

## II.   RCW 4.84.185 Attorney Fees

Allyis also challenges the trial court's award of attorney fees and costs under RCW 4.84.185. It contends that the court's findings underlying this award—findings of fact 4, 7, 9, 22, 31, and 33—are not supported by substantial evidence.

The decision to award attorney fees under RCW 4.84.185 is within the trial court's discretion. Timson v. Pierce County Fire Dist. No. 15, 136 Wn. App. 376, 386, 149 P.3d 427 (2006). This court will not disturb such an award absent a clear showing of abuse. Highland Sch. Dist. No. 203 v. Racy, 149 Wn. App. 307, 312, 202 P.3d 1024 (2009). Thus, we must ask whether the trial court exercised its discretion in a manner that was manifestly unreasonable or based on untenable grounds or reasons. Tiger Oil Corp. v. Dep't of Licensing, 88 Wn. App. 925, 938, 946 P.2d 1235 (1997).

RCW 4.84.185 permits the trial court to require the nonprevailing party to pay the prevailing party's reasonable expenses incurred in opposing a claim that was frivolous and advanced without reasonable cause. A frivolous action is one that cannot be supported by any rational argument on the law or facts. Goldmark

---

[6] Specifically, findings 7, 8, 10, 23, 24, 25, 26, 27, 28, and 29.

v. McKenna, 172 Wn.2d 568, 582, 259 P.3d 1095 (2011). Before fees may be awarded under this statute, the trial court must enter findings that the action in its entirety is frivolous. Biggs v. Vail, 119 Wn.2d 129, 131, 830 P.2d 350 (1992).

As a preliminary matter, Allyis challenges finding of fact 4, which found that counsel for Simplicity told Davis that Allyis's claims against Simplicity were frivolous on multiple occasions. Allyis argues that this finding treated the statements of counsel as proof that the claims were frivolous. But, nothing in the finding states that the court was drawing such an inference. Rather, it appears to be a correct statement of the facts from the record: counsel for Simplicity told counsel for Allyis on multiple occasions that he believed the claims were frivolous. This finding is supported by substantial evidence.

The trial court's findings on RCW 4.84.185 treated the unjust enrichment claim individually and the original four claims collectively. Given the detailed analysis of the original four claims in section I, this section treats those claims as a collective.

A.    Unjust Enrichment

Allyis argues that the unjust enrichment claim was not frivolous or advanced without reasonable cause. It challenges the trial court's finding of fact 7, finding that this claim was frivolous in part because Allyis has never had any interaction with Simplicity outside of this lawsuit. It argues that Simplicity interacted with Allyis via Schroder when Schroder solicited an Allyis employee with Simplicity's permission and on its behalf.

During the deposition of Simplicity representative Annie Gleason, Allyis asked whether Schroder ever contacted his former co-workers at Allyis to recruit them for Simplicity. Gleason responded that Schroder did contact one person to recruit her for Simplicity. But, that person's contract was ending and she was looking for new work. Schroder told Gleason that this person was looking for a new role and had a skill set that Simplicity needed. Gleason stated that she did not tell Schroder to do anything to recruit this person, but responded along the lines of, " '[O]h, okay. Great.' "

Allyis's unjust enrichment claim was based on Schroder's wrongful recruitment of Allyis employees and clients[7] for Simplicity. Allyis appears to argue that this claim was not frivolous, because Gleason's deposition shows that Schroder, acting as Simplicity's agent, recruited at least one Allyis employee to work for Simplicity. However, even assuming that this Allyis employee was ultimately hired by Simplicity, Allyis does not dispute that Gleason stated that this employee's contract was about to expire.[8] Nor does it challenge Simplicity's assertion that the employee was looking for work elsewhere before her contract expired or that she started work for Simplicity after her contract expired. Nor does it assert that it wished to retain this employee. This evidence supports the trial court's finding that Allyis did not confer a benefit on Simplicity.

---

[7] Although Allyis claimed that Schroder recruited Allyis employees to work for Simplicity and bring their clients with them, it never identified any clients that Simplicity gained from Allyis.

[8] At oral argument, Allyis contended that while Gleason said this, that does not necessarily make it true.

As discussed in section I.A.1, Allyis's unjust enrichment claim was not grounded in fact or warranted by the law. Consequently, we conclude that Allyis's unjust enrichment claim cannot be supported by a rational argument on the law or facts and thus is frivolous.

B.    Original Claims

Allyis also argues that the four claims in its original complaint were not frivolous or advanced without reasonable cause. It challenges the trial court's findings of fact 9 and 22, which found that these claims were frivolous and inferred that Allyis filed them to bring Simplicity into the lawsuit and drive a settlement.

Allyis suggests it was illogical for the trial court to infer that Allyis filed the original claims because it believed Simplicity would pay a settlement. But, given the dearth of evidence that Simplicity took any actions that merited being sued, this inference is not illogical. Davis's constant refusals to engage in discovery combined with his requests that Simplicity compromise could be read as supporting the trial court's inference—that Davis did not believe he had a case against Simplicity and wanted to push for a settlement.

Because Allyis failed to ever specify the conduct supporting its unjust enrichment, tortious interference, injurious falsehood, UTSA, or CPA claims, there was substantial evidence that these claims were frivolous and advanced without reasonable cause. The trial court's findings of fact 4, 7, 9, and 22 are supported by substantial evidence.

III. Amended Order

After Allyis moved for reconsideration of the trial court's initial order awarding attorney fees and CR 11 sanctions, the court entered an amended order. The amended order contained additional findings, including several that addressed the propriety of the original order. Finding of fact 31 provides that the evidence and reasonable inferences therefrom support the original order. Finding of fact 33 states that due to Allyis's and its attorney's conduct throughout litigation, including filing frivolous claims, the original order did substantial justice in compensating Simplicity for having to defend against these claims.

Allyis challenges these findings, arguing that there was no evidence to support finding of fact 31, and that finding of fact 33 demonstrates that the trial court was motivated by something other than the record.[9] Both findings are better construed as conclusions of law, and we treat them accordingly. See Grundy v. Brack Family Trust, 151 Wn. App. 557, 567, 213 P.3d 619 (2009) ("We review conclusions of law mislabeled as findings of fact de novo as conclusions of law."). The trial court's findings pertaining to CR 11 sanctions and RCW 4.84.185 support both conclusions. Because Allyis's claims were not well grounded in fact or law or a good faith argument to modify existing law, and they were advanced without reasonable cause, the trial court's original order imposing CR 11 sanctions and awarding attorney fees under RCW 4.84.185 was justified. The trial court did not err in entering findings of fact 31 and 33 in its amended order.

---

[9] We note that Allyis challenges whether any sanctions should have been imposed, not the amount of the sanctions.

22

IV.   Attorney Fees on Appeal

Simplicity argues that it is entitled to attorney fees on appeal, because the appeal was necessary to recover payment from Allyis and because the appeal was frivolous. This court may award attorney fees for a frivolous appeal. RAP 18.1; RAP 18.9(a). An appeal is frivolous where it presents no debatable issues or legitimate arguments for an extension of law. Harrington v. Pailthorp, 67 Wn. App. 901, 913, 841 P.2d 1258 (1992). Here, Allyis pursued claims against Simplicity that were not supported by the facts or the law. It has not presented any debatable issues on appeal. We conclude that Simplicity is entitled to attorney fees and costs on appeal.

We affirm.

WE CONCUR: